UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CLARENCE BURTON PARSLEY, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:23-cv-00006-JPH-MG |
| | ) |
| HOLCOMB Lt., | ) |
| I. RANDOLPH, | ) |
| M. ELLIS, | ) |
| TAWNI TEMPLETON, | ) |
| T. WELLINGTON, | ) |
| S. CRICHFIELD, | ) |
| REED, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Clarence Parsley, III, filed this action under 42 U.S.C. § 1983 alleging that Defendants Lt. Holcomb, I. Randolph, M. Ellis, Tawni Templeton, S. Crichfield, and Officer Reed subjected him to unconstitutional conditions of confinement. Defendants have moved for summary judgment. Dkt. [51]. For the reasons below, that motion is **GRANTED**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565,

1

572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Parsley and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

**A. Parties**

Mr. Parsley was incarcerated at Wabash Valley Correctional Facility in segregation between 2017 and November 2023. Dkt. 52-1 at 10-11 (Parsley deposition). In November 2023, after this lawsuit was filed, he was transferred to a prison in Ohio because "[i]t was the only way they was going to let me off lockup" because of his frequent history of altercations at Wabash Valley. *Id.* at 12.

Lt. Holcomb was the lead supervisor in the Wabash Valley Secured Housing Unit ("SHU") during the time covered by Mr. Parsley's complaint. Dkt. 52-2 at ¶ 4 (Holcomb affidavit).

Officer Reed worked within the SHU during the time covered by Mr. Parsley's complaint. Dkt. 52-10 at ¶ 4 (Reed affidavit).

Mr. Wellington was a grievance supervisor at Wabash Valley during the time covered by Mr. Parsley's complaint. Dkt. 52-11 at ¶ 3 (Wellington affidavit).

Ms. Crichfield was a grievance specialist at Wabash Valley from April 2019 to May 2020, and again from January 31, 2022 to March 23, 2023. Dkt. 52-12 at ¶ 3 (Crichfield affidavit).

Ms. Templeton was a grievance specialist at Wabash Valley between August 2020 to December 2021. Dkt. 52-13 at ¶ 3 (Templeton affidavit).

Mr. Ellis is and was a litigation liaison at Wabash Valley during the time covered by Mr. Parsley's complaint. Dkt. 52-14 at ¶ 4 (Ellis affidavit). He also acted as the Warden's designee for grievance appeal purposes. *Id.*

Mr. Randolph worked in the Indiana Department of Correction Central Office as Grievance Manager during the time covered by Mr. Parsley's complaint. Dkt. 52-15 at ¶ 3 (Randolph affidavit).

**B. SHU Recreation Generally**

Inmates confined in the SHU are offered out-of-cell recreation for one hour, six days a week. Dkt. 52-2 at ¶ 5. Three of the six days are indoor recreation, and three are outdoors within recreation cages located on a concrete pad. *Id.* Lt. Holcomb expected that the outdoor recreation pads would be "deep cleaned" on weekends and swept daily, if staffing and weather permitted it. *Id.* at ¶ 6. However, due to staffing shortages in 2021 and 2022 the pads may not have been cleaned as frequently as they had been previously. *Id.* at ¶ 7. The outdoor recreation area concrete pad does not have a drain, and water can sit in the pads after it rains unless a staffer uses a squeegee to push the water out. *Id.* at ¶ 8. Because of his violent history, Mr. Parsley was not allowed to use squeegees because of their potential to be used as a weapon. *Id.* at ¶ 10.

**C. Specific Incidents**

**1. January 20, 2021[1]**

On this date, a non-defendant officer placed Mr. Parsley in an outdoor recreation cage that had human feces, bird feces, and dead birds in it. Dkt. 52-1 at 14, 24. After Mr. Parsley complained about the cleanliness of the cage, he was immediately removed from it. *Id.* at 14-15. A non-defendant officer denied

---

[1] Mr. Parsley testified in his deposition that prior to this date, a counselor would arrange for the recreation cages to be cleaned if inmates complained about them. Dkt. 52-1 at 13.

Mr. Parsley access to supplies to clean off his shoes before being taken back to his cell. *Id.* at 15. After being in this cage, Mr. Parsley experienced a sore throat for a few days—he "believe[s] it was a result" of the conditions of the cage, but "can't say that it was." *Id.* at 29-30. Mr. Parsley never again encountered human waste in the outdoor recreation cages. *Id.* at 29.

Mr. Parsley filed a grievance about this incident. Dkt. 52-4 (Grievance No. 122948). Ms. Templeton forwarded the grievance to Lt. Holcomb. *Id.* at 6. He responded that "[t]he rec pads have been cleaned and should be cleaned on weekends. They should be swept daily if staffing and weather permits." *Id.* at 8. Mr. Templeton included Lt. Holcomb's response in her response to Mr. Parsley, stating "[t]his issue has been addressed by Lt. Holcomb, he has a plan in place to make sure that the rec pads are being cleaned weather permitting." *Id.* at 1.

### 2. November 16, 2021

On this date, a non-defendant officer placed Mr. Parsley in an outdoor recreation cage that had bird feces on the ground and on the cage and standing water of about two to three inches. Dkt. 52-1 at 30. Mr. Parsley filed a grievance about this incident. Dkt. 52-5 (November 16, 2021 Grievance). Mr. Wellington did not formally file or assign a grievance number for this grievance because he attempted to resolve it informally and he "returned" it to Mr. Parsley, stating "I have this being addressed." *Id.* at 1. Mr. Wellington recalls that he forwarded the complaints in the grievance to staff but does not recall what response he received. Dkt. 52-11 at ¶ 7. Mr. Wellington admits in his affidavit that on occasion, he "would sometimes first attempt to resolve grievances submitted by

5

offenders informally. This would not preclude offenders from later attempting to resolve the grievance formally." Dkt. 52-11 at ¶ 6.

### 3. July 9, 2022

On this date, Officer Reed took Mr. Parsley to outdoor recreation and told him that the cage he was going to had standing water in it. Dkt. 52-1 at 32. Officer Reed specifically said that Mr. Parsley could either not have outdoor recreation or he could go to a cage with water in it. *Id.* at 39. The cage also had bird feces in or on it. *Id.* at 32. Officer Reed refused Mr. Parsley's requests to have the cage cleaned out. *Id.*

Mr. Parsley filed a grievance about this incident. Dkt. 52-6 (Grievance No. 143208). Ms. Crichfield asked Lt. Holcomb to review it, and he responded, "The staff do not have time to sweep out the rec pads. We as well as every department are going through staff shortages. The outside rec cages are not equipped with a drain so that rainwater does collect on the concrete pads. Concrete is impermeable water will collect to the lowest level of the pad." *Id.* at 4. Ms. Crichfield denied the grievance, stating "[s]taff is acting with the resources that they have. Recreation is not forced. If you do not wish to go to recreation, you do not have to." *Id.* at 1. On August 24, 2022, Mr. Ellis denied Mr. Parsley's level 1 grievance appeal, but added in part that "S[H]U staff have been advised not to use rec cages with standing water, this should not be an issue in the future." *Id.* at 5. Mr. Randolph denied Mr. Parsley's level 2 grievance appeal. *Id.* at 9.

#### 4. July 30, 2022

On this date, Mr. Parsley was taken by a non-defendant officer to a recreation cage with standing water and bird feces in it. Dkt. 52-1 at 32. There was also some type of red algae or fungus that became "like a slime" when water was on the pad. *Id.* at 33. While walking around the cage, Mr. Parsley slipped and fell. Dkt. 52-7 (video of incident). Staff arrived about a minute and twenty seconds after he fell, and he was removed from the cage about eight minutes after that and taken for a medical evaluation, at which time he was noted to have a knee abrasion or small skin tear. *Id.*; dkt. 52-8 (incident report). There are no medical records indicating the extent or severity of injuries Mr. Parsley sustained from this fall.

Mr. Parsley filed a grievance about this incident. Dkt. 52-9 (Grievance No. 143848). Ms. Crichfield again asked Lt. Holcomb to review it, who responded again explaining the lack of drainage on the concrete and that standing water collects on them. *Id.* at 8. He added, "[n]ight shift sanitation has been made aware of this complaint and moving forward [w]e will put recs on hold or whatever we need to do to ensure the safety and security of staff and incarcerated individuals." *Id.* Mr. Ellis denied Mr. Parsley's level 1 appeal and Mr. Randolph denied his level 2 appeal. *Id.* at 1, 4.

### D. Procedural History

Mr. Parsley filed his complaint on January 1, 2023. Dkt. 1. As discussed in the Court's screening order, Mr. Parsley alleged only unconstitutional conditions of confinement occurring on the above dates. Dkt. 11 at 2-3. The

7

Court allowed Eighth Amendment claims to proceed against Lt. Holcomb, Officer Reed, Mr. Randolph, Mr. Ellis, Ms. Templeton, Mr. Wellington, and Ms. Crichfield. *Id.* at 4. It dismissed claims against IDOC Commissioner Robert Carter and Wabash Valley Warden Frank Vanihel. *Id.*

Defendants moved for summary judgment on April 22, 2024. Dkt. 51. Mr. Parsley responded, dkt. 60, and filed a motion to conduct more discovery, which the Court denied, dkt. 64. As noted in that order, Mr. Parsley's summary judgment response also is comprised in large part of a request to conduct additional discovery. The Court, having denied Mr. Parsley's request to conduct additional discovery, now proceeds to resolving the summary judgment motion based on the designated evidence.

### III.
### Discussion

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving

8

the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

### A. Grievance Defendants

First, Mr. Parsley contends that Mr. Wellington, Ms. Crichfield, Ms. Templeton, Mr. Ellis, and Mr. Randolph should have done more to ensure the cleanliness of the SHU outdoor recreation area or hold Lt. Holcomb and others accountable for the lack of cleanliness in response to Mr. Parsley's grievances.

There is no freestanding right under federal law to access a prison's administrative remedy process—the Seventh Circuit has "specifically denounc[ed] a Fourteenth Amendment substantive due process right to an inmate grievance procedure." *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Grieveson v. Anderson*, 538 F.3d 763, 772 & n. 3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)).

Rather, to establish liability against a prison official under § 1983, including grievance processors, a plaintiff must show that "'a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v.*

9

*Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Each defendant is considered independently. *Id.* Liability may be imposed against a prison official who knows about a condition that poses an excessive risk of harm to an inmate and has the power to do something to correct it, but then disregards that condition. *See Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997).

Here, Mr. Wellington, Ms. Crichfield, and Ms. Templeton referred Mr. Parsley's complaints about the conditions of the SHU recreation cages to staff at Wabash Valley who were responsible for those cages and therefore the ones able to do something about any problems with those conditions. Dkt. 52-4 at 6–8; dkt. 52-5 at 1; dkt. 52-9 at 8. Mr. Ellis and Mr. Randolph reviewed and confirmed these responses (except for the grievance reviewed by Mr. Wellington). *See* dkt. 52-6 at 5, 9; dkt. 52-9 at 1, 4. And Mr. Parsley has not designated evidence to contest each of these defendants' sworn testimony that they had no authority over when or how the SHU cages were cleaned or maintained. Dkt. 52-11 ¶ 8; dkt. 52-12 ¶ 8; dkt. 52-13 ¶ 7; dkt. 52-14 ¶ 8; dkt. 52-15 ¶ 7. Moreover, the grievances appear to have had some effect because Mr. Parsley did not encounter human waste in a recreation cage after his first complaint about it. Dkt. 52-1 at 29. Similarly, after he slipped and fell in the cage in July 2022, SHU policy was changed to provide that outdoor recreation cages could not be used if they had standing water in them. Dkt. 52-9 at 8. The designated evidence therefore does not allow a reasonable jury to find that these defendants were deliberately indifferent to the conditions Mr. Parsley faced.

10

As for Mr. Wellington, while he did not follow IDOC policies and procedures when he tried to "informally" resolve Mr. Parsley's November 2021 grievance despite it being a "formal" grievance, "[s]ection 1983 protects against constitutional violations, not violations of departmental regulation and practices." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (cleaned up). The undisputed evidence is that Mr. Wellington brought this particular complaint to the attention of other staff at Wabash Valley who were better able to directly address Mr. Parsley's complaint. So no reasonable jury could find that Mr. Wellington was deliberately indifferent either.

In sum, there is no genuine issue of material fact as to whether Mr. Wellington, Ms. Crichfield, Ms. Templeton, Mr. Ellis, or Mr. Randolph were personally responsible for the claimed unconstitutional conditions of confinement within the SHU recreation cages or failed to bring concerns to the appropriate officials when they learned of them. *See Thomas v. Martija*, 991 F.3d 763, 773 (7th Cir. 2021) (affirming summary judgment for a defendant who "had nothing to do with any delays"); *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011) (case manager was not deliberately indifferent because he "was able to relegate to the prison's medical staff the provision of good medical care"). They are therefore entitled to judgment as a matter of law.

### B. Lt. Holcomb and Officer Reed

Regarding Lt. Holcomb and Officer Reed, the Court does not address whether they could bear some degree of personal responsibility for the conditions in the outdoor recreation areas because, as a matter of law, Mr. Parsley has not

11

designated evidence demonstrating an objectively serious risk to his health or safety.

Mr. Parsley's placement in segregation, which he does not challenge, impacted the conditions of confinement he experienced. *See Isby v. Brown*, 856 F.3d 508, 521-22 (7th Cir. 2017). Therefore, there must be evidence that Mr. Parsley experienced an "extreme deprivation of basic human needs" in order to show the existence of an objectively serious threat to his health or safety. *Id.* Although "'[s]*ome* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone,' this occurs 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Id.* at 522 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). When considering a conditions-of-confinement claim such as this, the duration of and nature of segregation must be considered along with whether there were feasible alternatives to the confinement. *Id.* at 521.

At some point, the practical unavailability of outside recreation for an inmate in segregation, because of unacceptably unsanitary conditions of the outside recreation area, may rise to the level of an Eighth Amendment violation. *See Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997) ("Lack of exercise may rise to a constitutional violation in certain limited circumstances 'where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened.'"). But here, Mr. Parsley's complaint specified only four occasions over the course of one-and-a-half years when he says he experienced

12

unacceptably unsanitary conditions in the cages. To the extent he suggests there was a more chronic problem with cleanliness, that was not plainly stated in his complaint[2] and he has not designated evidence with details allowing a reasonable jury to find such an issue.

In other words, Mr. Parsley claimed to have experienced unsanitary conditions in the cages on four occasions extended over about a year and a half. Putting aside the question of whether the conditions alleged were sufficiently serious if Mr. Parsley had designated evidence of consistent exposure over a longer period of time, he was only exposed to them for less than four hours—given that he was removed from the cage on the first occasion at his insistence and on the fourth was removed from the cage after he fell. Nor does the extent of uncleanliness appear to have been extreme. Aside from the first, brief exposure to human waste, Mr. Parsley was exposed to standing water, bird feces, and occasionally dead birds, none of which are shocking for outdoor recreation and do not "deny the inmate the minimal civilized measure of life's necessities" when occasionally present. *Isby*, 856 F.3d at 521.

Furthermore, except for the final occasion, there is no designated evidence that Mr. Parsley was meaningfully injured by these conditions. To the extent he did slip and fall in the water on the final occasion, "[f]ederal courts consistently

---

[2] The Seventh Circuit has "recognized the principle that 'a party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment.'" *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) (quoting *Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014)). "Specifically . . . parties cannot 'add entirely new factual bas[e]s ... not previously presented.'" *Id.*

13

have adopted the view that slippery surfaces . . . in prisons, without more, cannot constitute a hazardous condition of confinement." *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014) (affirming dismissal of a claim based on a wet shower-area staircase).

Mr. Parsley also suggests that the recreation cages were not maintained in accordance with Indiana Department of Correction or Wabash Valley policies. However, again, the violation of prison rules and regulations is not by itself a constitutional violation. *See Estate of Simpson*, 863 F.3d at 746.

As a matter of law, the severity of the conditions Mr. Parsley faced and the brief duration that he faced them did not amount to an objectively serious threat to his health or safety. For that reason, Lt. Holcomb and Officer Reed are entitled to judgment as a matter of law.[3]

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED.** Dkt. [51]. Final judgment consistent with this Order and the Court's screening order, dkt. 11, will issue by separate entry.

**SO ORDERED.**

Date: 3/25/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

---

[3] The Court therefore does not address whether Defendants are entitled to qualified immunity.

14

Distribution:

All ECF-registered counsel of record via email

CLARENCE BURTON PARSLEY, III
A825-003
SOUTHERN OHIO CORRECTIONAL FACILITY
1724 OH-728
P.O. Box 45699
Inmate Mail/Parcels
Lucasville, OH 45699